UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WILLIAM TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00147-WTL-MJD |
| | ) | |
| SUPERINTENDENT, WABASH VALLEY CORRECTIONAL FACILITY, | ) ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND CERTIFICATE OF APPEALABILITY**

Petitioner William Taylor is serving an 80-year sentence in the Indiana Department of Correction after being convicted in 2011 by a Boone County jury on two counts of A-felony child molestation. Mr. Taylor is also serving, concurrently, a 25-year sentence after pleading guilty in Hendricks County to additional charges of child molestation, sexual misconduct with a minor, and child seduction.

Mr. Taylor's petition for a writ of habeas corpus challenges the judgment entered in the Boone County case. For the reasons that follow, the petition must be denied, the action must be dismissed with prejudice, and no certificate of appealability shall issue.

**I. Factual and Procedural Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct appeal, the Indiana Court of Appeals summarized the conduct underlying Mr. Taylor's charges and the state's investigation into and prosecution of that conduct. *See Taylor v. State* (*Taylor I*), No. 06A04-1104-CR-272,

2011 WL 6591956, at *1–3 (Ind. Ct. App. Dec. 20, 2011) (slip op.). The Court of Appeals relied on this summary in reviewing Mr. Taylor's petition for postconviction relief. *See Taylor v. State* (*Taylor II*), No. 06A01-1511-PC-1876, 2016 WL 6358858, at *1–2 (Oct. 28, 2016) (slip op.).

Because the details of the conduct underlying Mr. Taylor's charges are not in dispute and have little significance for the issues asserted in Mr. Taylor's petition, the Court provides only an overview here. Over a period of ten years, Mr. Taylor engaged in various sexual acts with his minor stepchild, N.H. These acts began in 1999, when N.H. was about seven years old and lived in Boone County with Mr. Taylor and her mother, S.H. They occurred multiple times per week. Mr. Taylor's actions in Boone County included sexually fondling N.H. and forcing her to give and receive oral sex. *Id.* at *1.

In December 2019, N.H. reported her abuse to her mother and then to police. Detectives recorded a phone conversation between Mr. Taylor and N.H. in which Mr. Taylor acknowledged engaging in sexual acts with N.H. and that "it happened a lot." In that conversation, Mr. Taylor also apologized to N.H. and explained that he molested her because he "was in love with [her]" and "wanted to teach [her] what sex was supposed to be like . . . ." Mr. Taylor was arrested and taken to Hendricks County Jail. *Id.* at *1–2.

As the Indiana Court of Appeals summarized in reviewing Mr. Taylor's petition for postconviction relief, he was charged with molesting N.H. in both Boone County and Hendricks County:

> Taylor was charged in Hendricks County with ten counts for the most recent offenses against N.H., including two counts of Class A felony child molesting, four counts of Class B felony sexual misconduct with a minor, two counts of Class C felony misconduct with a minor, Class C felony child molesting, and Class D felony child seduction. Based on the same investigation, in February 2010, the State charged Taylor in Boone County with one count of Class B felony child molesting based upon sexual deviate conduct, which had occurred before the offenses charged

2

in Hendricks County. Taylor hired attorney Allen Lidy ("Lidy") to represent him in both cases.

*Id.* at *2.

In September 2010, while awaiting trial, Mr. Taylor sent a letter to Mr. Lidy asking for information about his charges and how to approach them. In this letter, Mr. Taylor:

> explained that he did not know how much longer he could "take being locked up" because of his blood pressure. Taylor asked [L]idy why Boone County had only charged him with one Class B felony while Hendricks County had charged him with ten offenses, which included Class A, B, C, and D felonies, and whether there were discrepancies in N.H.'s and her mother's depositions. Taylor also asked the likelihood of "beating the charges in Hendricks County and beating the charges in Boone County." Taylor further asked Lidy what the State was offering in pleas and what he should do.

*Id.* (citations omitted).

At the postconviction hearing, Mr. Lidy explained his approach to Mr. Taylor's defense. The Indiana Court of appeals summarized that testimony as follows:

> Although Lidy hoped for a "global plea, meaning a plea that would encompass both cases in both counties," with concurrent sentences that would not subject sixty-two-year-old Taylor to a *de facto* life sentence, the only offer from Hendricks County was for Taylor to plead guilty to Class A felony child molesting with a cap of forty-five years executed. Taylor, however, did not want to admit to a Class A felony offense, and trial was scheduled for February 14, 2011. At the time, there were no plea negotiations with or offers from Boone County.

*Id.* (citations omitted).

Eventually, Mr. Lidy was presented with a plea offer from the Boone County prosecutor, but he did not communicate that offer to Mr. Taylor, and Mr. Taylor was ultimately convicted in Boone County on two charges of A-felony child molesting:

> In January 2011, the Boone County prosecutor offered Taylor the opportunity to plead guilty as charged to the Class B felony offense by the January 24, 2011 plea agreement deadline. If Taylor did not accept the offer, the State planned to amend the information to two Class A felony child molesting charges based upon Taylor's age. Lidy did not communicate this plea offer to Taylor, and the plea agreement deadline passed without resolution of the case. The trial court subsequently granted the State's motion to amend the information to two counts of Class A felony child

3

molesting. A jury convicted Taylor of both counts in February 2011, and the trial court sentenced Taylor to forty years for each conviction with the sentences to run consecutively.

*Id.* at *3.

After being convicted in Boone County, Mr. Taylor reached a plea agreement on the Hendricks County charges:

> Taylor eventually pled guilty to Class C felony child molesting, two counts of Class C felony sexual misconduct with a minor, and Class D felony child seduction in exchange for a twenty-five-year sentence, which ran concurrently with the eighty-year Boone County sentence.

*Id.*

Mr. Taylor appealed his conviction and sentence, but the trial court was affirmed. *Taylor I*, 2011 WL 6591956. He failed to timely petition for transfer to the Indiana Supreme Court, and his motion for leave to file an untimely petition was denied. *See* Dkt. No. 11-2.

On October 30, 2012, Mr. Taylor filed a petition for postconviction relief asserting that he was convicted and sentenced without the effective assistance of trial counsel because Mr. Lidy failed to notify him of the Boone County prosecutor's plea offer. The Indiana Court of Appeals summarized the postconviction relief proceeding as follows:

> At the post-conviction hearing, [L]idy testified that his strategy was to find a global resolution plea agreement with concurrent sentences in both counties to avoid a *de facto* life sentence. He admitted that he had not communicated the Boone County plea offer to Taylor. Specifically, [L]idy never told Taylor that if he did not accept the State's offer to plead guilty to the Boone County Class B felony, the State would amend the information to two Class A felony child molesting charges. However, [L]idy further testified that Taylor would not have pled guilty to the Boone County Class B felony even if Lidy had communicated the offer to him. First, according to Lidy, Taylor never wanted to admit to a Class A or B felony offense at any point. Lidy further explained that if Taylor had accepted the Class B felony offer in Boone County while the Hendricks County case was still pending, Lidy could not "imagine [Hendricks County] doing anything except either making [Taylor] go to trial or plead the A felony because he already admitted the offense in Boone County." Lidy explained that if Taylor had pled guilty in Boone County, "it would have made it next to impossible to get any kind of a proposal that he could [have accepted in

4

> Hendricks County]." Taylor testified that he would have accepted the plea offer so that he would not have had to "put [his] family through a trial."

*Taylor II*, 2016 WL 6358858, at *3 (citations omitted).

The postconviction court denied Mr. Taylor's petition, finding that he was not prejudiced by Mr. Lidy's failure to communicate the plea offer. *See* dkt. 11-5. On October 28, 2016, the Indiana Court of Appeals affirmed. *Taylor II*, 2016 WL 6358858. On March 3, 2017, the Indiana Supreme Court denied Mr. Taylor's petition for transfer. *See* Dkt. No. 11-7. A month later, Mr. Taylor filed his habeas petition in this Court. Dkt. No. 2.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Taylor's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Under AEDPA, the Court reviews the last state court decision to address the merits of a prisoner's claim. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In this case, that is the Indiana

5

Court of Appeals' review of Mr. Taylor's petition for postconviction relief.[1] *See Taylor II*, 2016 WL 6358858. Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of [the Supreme] Court's clearly established precedents if the state court applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

---

[1] Mr. Taylor devotes much of his briefing to issues the Indiana Supreme Court allegedly discussed in deliberating over whether to grant his petition for transfer. Because the Indiana Supreme Court did not issue the last reasoned decision on Mr. Taylor's claim, these arguments are beside the point. Under AEDPA, the Court must review the Indiana Court of Appeals' decision on Mr. Taylor's petition for postconviction relief.

### III. Discussion

Mr. Taylor's petition presents only one claim: that he was convicted and sentenced without effective assistance of counsel due to Mr. Lidy's failure to communicate the Boone County prosecutor's plea offer.

*Strickland v. Washington*, 466 U.S. 668, 684 (1984), supplies the clearly established federal law, as determined by the U.S. Supreme Court, that governs a claim of ineffective assistance of counsel. "*Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence." *Hinton v. Alabama,* 571 U.S. 263, 272 (2014). In *Padilla v. Kentucky*, the Supreme Court summarized *Strickland*'s two-step inquiry: "Under *Strickland*, we first determine whether counsel's representation fell below an objective standard of reasonableness. Then we ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (internal quotations omitted).

The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (internal citations and quotation marks omitted).

This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

**A.** *Strickland* **Performance**

The Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.*

The parties agreed before the Indiana Court of Appeals—and they have not disputed here— that Mr. Lidy's performance was deficient under the standard articulated in *Frye*. *See Taylor II*, 2016 WL 6358858, at *7. Accordingly, the Court moves directly to the question of whether Mr. Lidy's failure to communicate the plea offer prejudiced Mr. Taylor.

**B.** *Strickland* **Prejudice**

Under *Strickland*, Mr. Taylor was denied his Sixth Amendment right to effective assistance only if he was prejudiced by Mr. Lidy's failure to communicate the Boone County offer. The clearly established federal law governing *Strickland* prejudice in the context of uncommunicated plea offers again comes from *Frye*. Having established deficient performance, a petitioner in Mr. Taylor's position "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.

The Indiana Court of Appeals applied the standard articulated in *Frye* in determining that Mr. Taylor was not prejudiced by Mr. Lidy's failure to communicate the Boone County plea offer.

Neither party argues that the Court of Appeals applied the wrong legal standard. All that remains, then, is for the Court to determine whether the Indiana Court of Appeals applied that standard unreasonably or rendered its decision based on an unreasonable determination of the facts.

The Indiana Court of Appeals found that, at the time the Boone County plea offer was presented, Mr. Taylor was guided by two primary goals: to avoid a sentence that would result in him spending the rest of his life in prison, and to avoid admitting to sexual misconduct greater than fondling. The Court of Appeals then found that accepting the Boone County plea offer was not likely to advance either goal and that Mr. Taylor was therefore unlikely to accept the offer had Mr. Lidy communicated it. For the reasons explained below, this Court finds that analysis reasonable.

**1. "Taylor's overriding goal was to find a way to leave prison alive."**

The Indiana Court of Appeals found that "Taylor's overriding goal was to find a way to leave prison alive." *Taylor II*, 2016 WL 6358858, at *14–15. The Court of Appeals provided two reasons for this conclusion.

The first was Mr. Taylor's age. *Id.* at *14. As his case approached trial in winter 2011, Mr. Taylor was 62 years old.

The second was Mr. Taylor's September 2010 letter to Mr. Lidy. *Id.* at 14. In that letter, Mr. Taylor asked Mr. Lidy why he was charged differently in Boone County than he was charged in Hendricks County. *See* Dkt. No. 12, postconviction ex. A. He asked about discrepancies in evidence. *See id.* And he asked both about his chances "of beating the charges" in both counties and about any plea offers. *See id.*

Mr. Taylor's letter to Mr. Lidy did not explicitly state that leaving prison alive was his "overriding goal." However, given Mr. Taylor's age and the questions raised in his letter to Mr. Lidy, it was at least reasonable for the Court of Appeals to infer that Mr. Taylor was interested in

9

achieving acquittal or a minimal prison sentence. Accordingly, the Court cannot conclude that the Court of Appeals' finding "ignore[d] the clear and convincing weight of the evidence." *Goudy*, 604 F.3d at 399–400 (applying 28 U.S.C. § 2254(d)(2)).

### 2. "Taylor did not want to admit to any sexual misconduct greater than fondling."

After being convicted in Boone County, Mr. Taylor accepted a plea offer in Hendricks County. At the postconviction hearing, Mr. Lidy testified that, in negotiating that plea bargain, "Mr. Taylor would only agree to C felony conduct or below," which would amount to admitting that he touched or fondled N.H. *See* Dkt. No. 12, postconviction hearing transcript, at 72:8–74:2. *See also* Ind. Code § 35-42-4-3(b) (eff. July 1, 2007–June 30, 2014) (defining C-felony child molestation as "fondling or touching" a child under fourteen years old). By contrast, Mr. Taylor would not plead guilty to the A- and B-felony charges in Hendricks County for child molesting and sexual misconduct with a minor—charges that alleged conduct greater than touching or fondling.[2] *See id.* Accordingly, there is a reasonable factual basis for the Court of Appeals' conclusion that Mr. Taylor "did not want to admit to any sexual misconduct greater than fondling." *Taylor II*, 2016 WL 6358858, at *14–15.

### 3. Therefore, "it would not have made sense for Taylor to plead guilty to the Class B felony."

Having reasonably determined that Mr. Taylor was seeking to avoid spending the rest of his life in prison and pleading guilty to sexual misconduct greater than fondling, the Indiana Court of Appeals reasonably concluded that accepting the Boone County plea offer would not have been

---

[2] At the time of Mr. Taylor's prosecution, A- and B-felony child molestation and B-felony sexual misconduct with a minor required that the defendant engage in sexual intercourse or deviate sexual conduct. *See* Ind. Code § 35-42-4-3(a) (eff. July 1, 2007–June 30, 2014); Ind. Code § 35-42-4-9(a) (eff. July 1, 2007–June 30, 2014). "Deviate sexual conduct" was defined to entail oral sex or the penetration of a sex organ or anus with an object. *See* Ind. Code 35-3.5-2-94, *repealed by* 2013 Ind. Legis. Serv. P.L. 158-2013, § 366 (H.E.A. 1006) (West) (eff. July 1, 2014).

10

in Mr. Taylor's interest when that offer was presented in January 2011. *See Taylor II*, 2016 WL 6358858, at *15.

The plea offer required Mr. Taylor to plead guilty to B-felony child molesting based on his engagement in sexual intercourse or deviate sexual conduct with N.H. *See* Ind. Code § 35-42-4-3(a) (eff. July 1, 2007–June 30, 2014). To plead guilty to that charge, Mr. Taylor would have to admit to the factual basis for that charge, which included sexual misconduct greater than fondling.

Moreover, pleading guilty to the Boone County charge would not have ended Mr. Taylor's criminal proceedings and may in fact have resulted in a harsher aggregate sentence. The Court of Appeals summarized Mr. Lidy's testimony on this issue. *See id.* at 8–9. With numerous charges remaining in Hendricks County, accepting a 20-year sentence on the Boone County charges would not have assured Mr. Taylor's release after completion of that sentence. There remained a strong possibility he would receive a lengthy sentence on the Hendricks County charges. At the time, the most favorable sentence offered by the Hendricks County prosecutor was capped at 45 years. There simply was no guarantee that Mr. Taylor could achieve a more favorable sentence in Hendricks County or that it would be applied concurrently with his Boone County sentence.

In fact, pleading guilty to the Boone County charge could have weakened Mr. Taylor's overall position. Mr. Taylor's admission to the Boone County charge might have been presented as evidence to prove similar conduct in Hendricks County. This would only have hurt Mr. Taylor's chances at a trial in Hendricks County and his bargaining power in negotiating a plea agreement there.

This assessment by the Indiana Court of Appeals was not unreasonable. Agreeing to a 20-year sentence and pleading guilty to the Boone County charge would not necessarily have been in Mr. Taylor's best interest, even when faced with the prospect of having the charge there amended.

11

Doing so would only strengthen the Hendricks County prosecutor's case against Mr. Taylor, hurting his chances of achieving acquittal or negotiating a sentence shorter than the 45 years he had been offered. Even if he succeeded in negotiating a shorter sentence in Hendricks County, there was no reason to expect it would be applied concurrently to his 20-year Boone County sentence. In short, accepting the Boone County offer left open (and perhaps increased) a strong possibility of a prison sentence lasting multiple decades. Given that risk, it was fair for the Court of Appeals to reason that there was not "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.

In his reply, Mr. Taylor argues that a 20-year sentence would have appeared much more attractive than the sentence he would have faced—and ultimately received—after the Boone County Prosecutor amended his charge there to an A-felony and added an additional A-felony charge. It certainly would—if the Boone County charges were the only charges Mr. Taylor faced. But Mr. Taylor was also facing ten felony charges in Hendricks County. Without saying so explicitly, the Indiana Court of Appeals' decision relies—reasonably—on the inference that Mr. Taylor would have weighed the Boone County offer based on its *overall impact* on his criminal liability rather than viewing it in isolation. Indeed, Mr. Lidy testified that he considered the offer from that perspective, and it is reasonable to infer that he would have advised Mr. Taylor accordingly had he communicated the offer. Although Mr. Taylor's argument is not without merit, he has not demonstrated that the Court of Appeals based its decision on an unreasonable application of clearly established federal law or an unreasonable determination of the facts.[3] *See* 28 U.S.C. § 2254(d).

---

[3] This is not to say that the Court of Appeals' analysis of the case reflects the only reasonable application of the evidence or that it is beyond scrutiny. For example, the Court of Appeals supported its decision by noting that the postconviction court "did not believe Taylor's testimony that he had always wanted to plead guilty to the Boone County Class B felony." *Taylor II*, 2016 WL 6358858, at *14; *see also* Dkt. No. 11-5

## IV. Conclusion

The Indiana Court of Appeals applied the proper legal standard in this case, and it did not apply the evidence to that standard in "an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. at 141. Mr. Taylor's petition for a writ of habeas corpus therefore must be **denied**. Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Taylor has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 8/1/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

at 6–7, *cited in Taylor II*, 2016 WL 6358858, at *10. This Court is unable to locate any testimony from Mr. Taylor in the postconviction hearing transcript stating that he "always wanted to plead guilty" to the Boone County charge. Rather, Mr. Taylor testified that he "would have taken a B Felony . . . as opposed to facing two A Felonies." *See* Dkt. No. 12, postconviction hearing transcript, at 100:21–23. Because the operative question under *Frye* is whether Mr. Taylor would have pled guilty had Mr. Lidy informed him of the Boone County offer, it is not clear to this Court that Mr. Taylor needed to demonstrate that he *always wanted* to plead guilty.

Even so, the question before this Court is whether the Indiana Court of Appeals reasonably applied clearly established federal law to the evidence. Viewed on the whole, the Court of Appeals' decision satisfies that standard.

Distribution:

WILLIAM TAYLOR
219153
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Justin F. Roebel
INDIANA ATTORNEY GENERAL
justin.roebel@atg.in.gov